JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| THOMAS ANTHONY FERRO,<br><br>        Appellant,<br><br><br>vs.<br><br><br>CAL-WEST EQUITIES, INC.,<br><br>        Appellee. | Case No. 2:25-cv-08036-DOC<br><br><br><br>**OPINION** |

## I.      INTRODUCTION

This appeal requires the Court to determine whether a creditor's state-court judgment against a fellow investor constitutes a claim belonging to the bankruptcy estate or, instead, a direct and independent claim held by the creditor. The distinction is dispositive. If the claim is derivative of the estate, it falls within the Chapter 7 trustee's exclusive authority and may be released through a trustee-approved settlement. If it is direct, it remains enforceable notwithstanding the bankruptcy proceedings.

Appellant Thomas A. Ferro appeals from the bankruptcy court's order denying his motion to interpret and enforce a settlement agreement entered into with the Chapter 7 trustee. Ferro contends that a default judgment obtained against him in Illinois, now held by Appellee Cal-West Equities, Inc., represents derivative damages that were released by that settlement. The bankruptcy court rejected that contention, concluding that the judgment arose from Ferro's independent misconduct and therefore constituted a direct claim not subject to the trustee's release.

For the reasons set forth below, the Court affirms.

## II.      BACKGROUND

### A. The EPD Investment Scheme

The underlying dispute arises out of an investment program operated by EPD Investment Company and its principal, Jerold Pressman. The enterprise ultimately collapsed and has been characterized as a Ponzi scheme. Numerous investors, including Ferro and the Huerths (Cal-West's predecessors-in-interest), suffered substantial losses. As the scheme deteriorated, Ferro obtained a security interest from Pressman in certain assets.

### B. The Illinois Litigation

The Huerths filed suit in the United States District Court for the Northern District of Illinois against multiple defendants, including Ferro. The operative complaint alleged, among other claims, consumer fraud and fraudulent concealment.

Ferro failed to respond, and a default judgment was entered against him in the amount of approximately $924,000, representing the Huerths' losses.

The Illinois court's findings, as reflected in the record, include that Ferro made representations to the Huerths regarding the viability of their investments and the financial condition of the enterprise, and that those representations supported liability for consumer fraud and fraudulent concealment.

## C. The Bankruptcy Proceedings

In December 2010, an involuntary Chapter 7 petition was filed against EPD. The Huerths were among the petitioning creditors and filed proofs of claim in the bankruptcy case.

The Chapter 7 trustee subsequently initiated avoidance actions against Ferro and related parties, seeking to recover transfers associated with the security interest Ferro had obtained.

In 2013, Ferro entered into a settlement with the trustee. Under that agreement, Ferro relinquished the security interest, and the trustee granted a release covering claims "arising from or related to" the avoidance actions and asserted on behalf of the estate or those claiming through it.

## D. The Present Dispute

The Illinois judgment was later domesticated and enforced in California. Ferro then filed a motion in the bankruptcy court seeking to enforce the settlement agreement and obtain a determination that the Illinois judgment had been released.

The bankruptcy court denied the motion, concluding that the claims underlying the Illinois judgment were direct claims against Ferro, not derivative claims belonging to the estate, and that the requested relief was procedurally improper.

This appeal followed.

## III.    STANDARD OF REVIEW

A bankruptcy court's denial of a motion to enforce a settlement agreement is reviewed for abuse of discretion. Legal conclusions are reviewed de novo, and factual findings for clear error.

## IV.  DISCUSSION

### A.  Governing Principles

The Bankruptcy Code vests the trustee with authority to pursue claims that are property of the estate. Such claims include those arising from injury to the debtor or from generalized injury to creditors as a whole. By contrast, claims based on particularized injury to individual creditors remain the property of those creditors and are not subject to the trustee's exclusive control.

This distinction, often framed as derivative versus direct claims, is well established. A claim is derivative if it seeks to recover for harm common to all creditors and would augment the estate for equitable distribution. A claim is direct if it arises from a distinct injury caused by a defendant's independent duty or misconduct toward a specific creditor.

### B.  Nature of the Illinois Judgment

Ferro contends that the Illinois judgment represents derivative damages because it reflects the Huerths' investment losses, calculated using a "net investment" methodology common in Ponzi scheme litigation. He further argues that the Huerths' filing of proofs of claim in the bankruptcy case placed those claims under the trustee's exclusive authority.

The Court is not persuaded.

The record demonstrates that the Illinois judgment was predicated on findings of consumer fraud and fraudulent concealment attributable to Ferro's own conduct. The allegations and findings describe affirmative misrepresentations made by Ferro to the Huerths regarding the status of their investments and the underlying enterprise.

These allegations establish a theory of liability based on Ferro's independent conduct toward the Huerths, not merely on the collapse of the EPD enterprise. The fact that the damages awarded correspond to the amount of the Huerths' investment does not alter the nature of the claim. As the bankruptcy court correctly observed, the use of a "net investment" measure does not transform a direct claim into a derivative one.

Nor does the filing of proofs of claim convert a creditor's independent tort claim into property of the estate. Creditors may assert claims in bankruptcy while retaining separate causes of action based on distinct injuries.

Accordingly, the Court concludes that the Illinois judgment represents a direct claim arising from alleged misrepresentations by Ferro, not a derivative claim belonging to the estate.

### C. Scope of the Settlement Agreement

Because the Illinois judgment is a direct claim, it falls outside the scope of the trustee's authority and, consequently, outside the scope of the settlement agreement.

The settlement resolved avoidance actions brought by the trustee and released claims held by the estate or those asserting rights through the estate. It did not purport to release independent claims held by individual creditors against non-debtor third parties for their own misconduct.

Ferro's contrary interpretation would extend the trustee's release beyond its permissible scope and effectively extinguish third-party claims that the trustee had no authority to compromise.

### D. Procedural Grounds

The bankruptcy court also concluded that Ferro's motion was procedurally improper, both because it sought relief that should have been pursued through an adversary proceeding and because challenges to the Illinois judgment should be directed to the issuing court.

In light of the Court's conclusion on the merits, it is unnecessary to resolve these procedural issues. They provide, at most, alternative grounds for affirmance, as FRBP 7001 requires such an adversary proceeding in matters such as these.

## V.    CONCLUSION

The bankruptcy court correctly determined that the claims underlying the Illinois judgment are direct claims arising from Ferro's alleged independent misconduct and are not derivative claims belonging to the bankruptcy estate. As such, they were not released by the trustee's settlement agreement.

The order denying Ferro's motion is therefore **AFFIRMED.**

IT IS SO ORDERED.

Dated: April 17, 2026

_____
Hon. David O. Carter
U.S. District Judge